WILLIAM TRUESDALE *et al.*

*v.*

THE PEORIA GRAPE SUGAR COMPANY.

*Filed at Ottawa September 26, 1881—Rehearing denied March Term, 1882.*

1. REMEDY—*laying railroad track in street, by consent of city.* A court of equity will not take jurisdiction to restrain the laying of a railroad side-track by a company in the public street in front of its own property, to connect with the main track of a railway, under license by the city council, by ordinance, on a bill by private individuals owning property in the vicinity, but not abutting on the part of the street to be used.

2. Any damages that may be sustained by property owners in a city by reason of the construction of a railroad track under the license of the city holding the fee of the street, must be sought in an action at law.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. D. McCULLOCH, Judge, presiding.

Mr. JULIUS S. STARR, and Messrs. COOPER & TENNERY, for the appellants:

While it is true that a city holds the fee of the streets, it is in trust for the benefit of the public, and the city authorities have no rightful power to alienate them or divert them to other uses. *Carter* v. *City of Chicago,* 57 Ill. 287; *Stack* v. *City of East St. Louis,* 85 id. 379; *Kreigh et al.* v. *City of Chicago,* 86 id. 407; *City of Alton* v. *Transportation Co.* 12 id. 60; *City of Quincy* v. *Jones,* 76 id. 23; *City of Chicago* v. *Rumsey,* 87 id. 35.

36—101 ILL.

The cases sustaining the grant of the privilege to construct a railroad track in a public street, are placed upon the ground that railways are improved highways, and subserve the public good as such, which reason fails here. *G. B. and W. R. R. Co.* v. *Hartley*, 67 Ill. 443; *Stack* v. *City of East St. Louis*, 85 id. 378.

The public are entitled to the use and enjoyment of the whole highway, and no individual can appropriate a portion of it to his own exclusive use. *The King* v. *Russell*, 6 East, 427; *People* v. *City of St. Louis*, 5 Gilm. 571; *Hart* v. *Mayor of Albany*, 5 Wend. 584.

As to the jurisdiction of courts of equity to prevent a nuisance, or obstruction of a highway, by injunction: *People* v. *City of St. Louis*, 5 Gilm. 571; *Green* v. *Oakes*, 17 Ill. 249; *Corning* v. *Lawrence*, 6 Johns. Ch. 439; *Hills* v. *Miller*, 3 Paige, 254; *Chicago and Vincennes R. R. Co.* v. *People*, 92 Ill. 170.

If by contiguity be meant actual contact, then the property of complainants can not be said to be contiguous; but this term, we conceive, is to be taken in a wider sense, so as to embrace property specially damaged by the obstruction. *Green* v. *Oakes*, 17 Ill. 250; *Craig* v. *People*, 47 id. 487; *Carter* v. *Chicago*, 57 id. 281; *Corning* v. *Lawrence*, 6 Johns. Ch. 254; High on Injunctions, sec. 528.

Messrs. PUTERBAUGH & PUTERBAUGH, for the appellee:

As to the power of a city to authorize the laying of a railroad track in and along its public streets, counsel cited *Moses* v. *Pittsburgh, Ft. Wayne and Chicago R. R. Co.* 21 Ill. 516; *Murphy* v. *City of Chicago*, 29 id. 279; *Stetson* v. *Chicago and Evanston R. R. Co.* 75 id. 74; *Patterson* v. *Chicago, Danville and Vincennes R. R. Co.* 75 id. 588; *City of Quincy* v. *Chicago, Burlington and Quincy R. R. Co.* 92 id. 23.

The laying of a railroad track upon a street will not be enjoined at the suit of an adjacent land owner, who simply

owns up to the line of the street, and over whose land the road does not pass, where no special damage is shown to the complainant different from that to all the other property owners. High on Injunctions, secs. 522, 533; *Bigelow* v. *Hartford, etc.* 14 Conn. 565; *O'Brien* v. *Norwich, etc.* 17 id. 372; *Frink* v. *Lawrence*, 20 id. 117, and cases cited *supra*.

The rule requiring complainants to show a special injury peculiar to themselves, distinct from the general inconvenience experienced by the public, is inflexible. *Corning* v. *Lawrence*, 6 Johns. Ch. 439; *McCowan* v. *Whitesides*, 31 Ind. 235; *Davis* v. *Mayor*, 4 Kern. 506; *Dawson* v. *St. Paul, etc.* 15 Minn. 136; High on Injunctions, sec. 528.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

In view of the previous decisions of this court it will not be necessary to enter upon any elaborate discussion of the questions raised on this bill. Private individuals, owning property and carrying on business in the vicinity, seek to enjoin defendants from laying a side-track in the street in front of their own property, to connect with any railroad previously constructed in the street. It is alleged in the bill an ordinance was about to be passed by the city council of Peoria that would authorize defendants to do the acts the injunction was intended to prevent. Conceding, as the bill does, the ordinance of the city will warrant the action of defendants in constructing a railroad track in the street, it must be considered as definitely settled by the previous decisions of this court that equity will not entertain jurisdiction to restrain the contemplated act. It is not alleged any portion of complainants' lands will be taken or touched by the proposed railroad track, nor are complainants abutting land owners. Their property is in the vicinity, on the same street, but not adjacent to the proposed improvement. The railroad track is to be constructed on the street, the fee of which, it is conceded, is in the corporation granting the privi-

lege to lay such track. When this bill was filed, the side-track was not then constructed. It was to be built under, and in conformity with, an ordinance of the city council. No direct injury would be done to complainants' lands, and at the utmost only consequential damages would be sustained. The nature and extent of such damages could only be ascertained after the completion of the work. It may be, if the ordinance granting the license shall be observed in the construction of the side-track, no serious detriment will result to complainants or others from its construction. But be that as it may, the track is to be constructed on lands not owned by complainants, and under a license from the only party having lawful authority to grant the privilege, and any expected damages that may be sustained by reason of the proposed work, can only be recovered in an action at law. Equity will not entertain jurisdiction to enjoin the proposed work. The rule of law on this subject is so well settled by previous decisions of this court, it is not deemed necessary to discuss it again as a new question. The following cases contain a full expression of the views of the court on the questions discussed by counsel in this case: *Stetson* v. *Chicago and Evanston R. R. Co.* 75 Ill. 74; *Patterson* v. *Chicago, Danville and Vincennes R. R. Co.* 75 id. 588; *Peoria and Rock Island Ry. Co.* v. *Schertz,* 84 id. 135; *Cairo and Vincennes R. R. Co.* v. *The People,* 92 id. 170.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MULKEY, dissenting:

I do not concur in the decision of this case. It is, in my judgment, a new and dangerous departure from well established fundamental principles. The necessary effect of it will be to invite encroachments upon public rights for the benefit of a favored few, and place such as are unable to protect themselves at the mercy of those who, by their power

and influence, are able to control municipal legislation in obtaining grants of exclusive privileges, often to the detriment, and sometimes ruin, of their less influential neighbors.

It is true the fee of the streets is generally, as in the present case, in the corporation, yet they are held in trust for the people generally, and can only be used for the ordinary purposes of streets. They can not be lawfully used for any purpose which is not open alike to all classes of persons, without regard to whether they are powerful and influential, or otherwise. Any attempt on the part of municipal authorities to appropriate public streets, or any part of them, to the exclusive use or benefit of a mere private person or corporation, to the injury of neighboring proprietors, is a manifest breach of a public trust, and a flagrant outrage upon private rights, and a court of equity, in such cases, is the only forum that affords an adequate remedy. To say that equity will not interpose in such cases, to me seems like confounding all distinctions between equitable and legal remedies, and denying equitable jurisdiction in matters of trust,—a class of cases supposed by Story and other eminent authors to be cognizable in courts of equity only.

The present case is simply this: The municipal authorities granted to appellee, an extensive manufacturing company, the right to construct and put in operation a railway in one of the public streets of the city, to be used exclusively by the company in the transaction of its own private business, in which the public had no interest whatever. The direct effect of building and operating this railway will be to destroy the street altogether for the ordinary purposes of a highway, and thereby materially injure the property and business of appellants carried on upon and near the street in question, and the decision in the present case holds that equity will not interpose, by injunction, to prevent an injury of this kind. No authority is cited which sustains it, and I confidently assert none can be found. If the proposed rail-

way, when put in operation, would be open to the public generally, then I concede, under the previous decisions of this court, an injunction would not lie at the suit of a private individual, however much he might be injured by the building and operating of such a road. But such is not the case here. The city had the right to permit a railway to be constructed in one of its streets which, when completed, would be open to the public generally, for the carriage of goods or passengers, or both, on equal terms to all; but it had no authority to permit such a road to be constructed or operated for the exclusive use of a mere private company. In the one case the city has a discretion to do or not do; in the other, there is no power to act at all. In the former case, equity will not interpose, but remit the parties to a court of law, and such relief as that tribunal affords. In the latter case, there being a total want of authority on the part of the city to act at all, and the attempt to do so being a clear breach of a public trust with respect to the ownership and control of the streets, a court of equity, according to all the authorities, should and does interpose.

If a city may make such a grant as this at all, it may absolutely fill a public street with mere private structures and enterprises, in which the public generally have not a particle of interest, to the detriment and utter ruin of other property and business in the neighborhood, and in such cases nothing but the restraining power of a court of equity affords anything like adequate relief. To remit him to a court of law, under such circumstances, amounts to a simple denial of justice. While a suit in a court at law, which is powerless to avert the threatened injury, is dragging its slow length along through the various courts to final determination, one's property may be ruined, his business broken up, and he in the end will be permitted to recover only for the immediate results of the original wrong. A flourishing and profitable business is gone, which he perhaps can never again

restore.    All his prospective profits are swept away from him by the wrongful act of the defendant, and he is not permitted to recover anything on account of them.

Under the present decision this almost fruitless suit at law is the only remedy which an enlightened jurisprudence affords. I repeat, this is simply a denial of justice.    I hold it to be one of the highest duties of the courts of the country to steadily and firmly resist all encroachments of power upon the rights of the people.    This, I submit, has not been done in the present case, and for this and other reasons already assigned, I respectfully, but earnestly, dissent from the conclusion reached by a majority of the court.

Mr. JUSTICE WALKER, and Mr. JUSTICE DICKEY:    We fully concur in the views expressed in the above dissenting opinion.

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM:    The only question argued on the motion for a rehearing, and not discussed in the original opinion, that is deemed necessary now to be remarked upon, is the point made that the side-track, although constructed under an ordinance of the city granting a license to lay it in a public street, is solely for the "convenience and benefit" of the corporation constructing it.    This is a misapprehension of the law.    Section 12, art. 11, of the constitution, provides, that "railways heretofore constructed or that may hereafter be constructed in this State, are hereby declared public highways, and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as may be prescribed by law."    The track defendant was authorized by ordinance to construct, when completed and attached to the principal track, is as much a "public highway," in the sense that term is used in the constitution, as is the road of

the company to which it is attached, and no doubt is entertained the company is subjected to the same duty to use it for the "convenience and benefit" of the public as any part of its main track.

It is different, as this court has decided in *Kœlle* v. *Knecht*, 99 Ill. 396, where such structures are built by individuals on their own lands for mere private use. But that is not the case here. This track was laid, or is to be laid, in a public street, under an ordinance of the city granting the privilege. It will be perceived, on examination, the ordinance contains nothing that indicates the switch, when built, was to be for the sole use of the corporation constructing it. On the contrary, the corporation, in its answer, denies it will prevent the use and occupation of the street by the public. Since its construction this switch is a part of the main track with which it is connected, and is in the same sense a "public highway," to be used by the company for the same purposes, "under such regulations as may be prescribed by law."

The petition for rehearing will be denied.

*Rehearing denied.*